## COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

December 13, 2023

Kevin R. Shannon, Esquire
Potter, Anderson & Corroon LLP
1313 North Market St.
Hercules Plaza, 6th Floor
Wilmington, DE 19801

William M. Lafferty, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market St.
Wilmington, DE 19801

RE:     *Pilot Corp. v. Greg Abel et al.,*
        C.A. No. 2023-0813-MTZ

Dear Counsel:

Today I heard argument on plaintiff Pilot Corporation's Motion to Strike

Defenses and certain defendants' Motion for Leave to File Amended Answer and

Affirmative Defenses.[1]  The plaintiff's motion is granted.  The defendants' is

denied.

### I.     Background

Plaintiff Pilot Corporation filed this action against defendants Greg Abel,

Kevin Clayton, Marc Hamburg, Mark Hewett, Scott Thon, Berkshire Hathaway

Inc., and National Indemnity Company ("NICO," and collectively the "Berkshire

---

[1] The transcript of today's hearing has not been finalized.  Citations in the form Rough
Tr. – refer to a rough copy of the transcript.  I also heard argument on the plaintiff's
Motion for a Protective order filed on December 11, 2023.  Docket item ("D.I.") 116.
For the reasons below, that motion is now moot.

Defendants"), as well as Pilot Travel Centers LLC ("PTC").[2]  Berkshire acquired a 38.6% interest in PTC from Pilot and other entities in 2017.   In connection with that transaction, Berkshire, NICO, Pilot, and others entered into an investor rights agreement (the "Investor Rights Agreement").[3]   The Investor Rights Agreement required Berkshire, through NICO, to purchase an additional 41.4% stake in PTC in January 2023.  It also granted Pilot the right to sell its remaining 20% interest to Berkshire within sixty days of December 31, the end of PTC's fiscal year (the "Put Right").[4]  The Put Right purchase price is equal to ten times PTC's earnings before interest and taxes, or EBIT, as captured in the year-end financials for that fiscal year.  The parties also entered into an LLC agreement governing PTC (the "LLC Agreement").[5]  The LLC Agreement granted Pilot a consent right over changes to PTC's "accounting policies," "except as required by Applicable Law or GAAP" (the "Consent Right").[6]

Pilot alleges Berkshire caused PTC to use pushdown accounting starting in March of 2023; Pilot fears Berkshire will cause PTC to use pushdown accounting

---

[2] D.I. 1.

[3] D.I. 1, Ex. B.

[4] *Id.* § 2.4.

[5] D.I. 1, Ex. A.

for its 2023 year-end financials. Doing so would reduce PTC's 2023 EBIT and therefore the value of Pilot's Put Right if Pilot exercises it in 2024. Pilot contends the adoption of pushdown accounting is a change in PTC's accounting policies that triggers the Consent Right. It seeks expedited declaratory and injunctive relief to that effect. I expedited those claims on November 3.[7] Pilot also brought a claim for breach of fiduciary duty. I denied expedition of that claim, and stayed it pending resolution of Pilot's claims sounding in contract.[8]

In answering the complaint, the Berkshire Defendants asserted eleven affirmative defenses, including unclean hands and *in pari delicto*.[9] Both defenses are based on allegations that James Haslam III, as Pilot's "authorized agent," promised "illicit side payments to numerous PTC senior executives in order to unjustly increase the value of its Put Right."[10]

## II. The Motion To Strike

I begin with Pilot's motion to strike the affirmative defenses of unclean hands and *in pari delicto* as originally pled and repeated in the Berkshire

---

[6] *Id.* § 8.08(i).

[7] D.I. 64 at 63–67.

[8] *Id.* at 67–68.

[9] D.I. 62 at 36–40.

Defendants' proposed amended answer.[11]  Pilot moves to strike these defenses on the basis that they lack a sufficient nexus with Pilot's contractual claims.  Pilot has moved only to strike the defenses as articulated in Defendants' original answer, and does not challenge the new allegations in the proposed amended answer on that basis.  It also has not moved to strike the defenses as to the stayed breach of fiduciary duty claims, and so I address these defenses only as applied to Pilot's claims for breach of the Consent Right.[12]

Under Court of Chancery Rule 12(f), "the Court may order stricken from any pleading any insufficient defense."[13]  When addressing a motion to strike an affirmative defense, the Court assumes the truth of the facts alleged in the answer and asks whether "the challenged defense is legally sufficient."[14]  Such motions are "are granted sparingly and only when clearly warranted with all doubt being resolved in the nonmoving party's favor."[15]

---

[10] *Id.* at 38–39.

[11] D.I. 109 at Mot.

[12] For the avoidance of doubt, my ruling does not implicate the defense of unclean hands as applied to Pilot's stayed claims for breach of fiduciary duty.

[13] Ct. Ch. R. 12(f).

[14] *Holtzman v. Gruen Hldg. Corp.*, 1994 WL 444756, at *3 (Del. Ch. Aug. 5, 1994).

[15] *Salem Church (Del.) Assocs. v. New Castle Cnty.*, 2004 WL 1087341, at *2 (Del. Ch. May 6, 2004).

### A.     The Unclean Hands Defense

Pilot contends its expedited claims advance the narrow question of whether PTC's adoption of pushdown accounting for 2023 would violate Pilot's Consent Right, and that the unclean hands defense is unrelated to that contractual issue. The Berkshire Defendants view Pilot's claims more broadly, contending Pilot accuses Berkshire of improperly manipulating PTC's 2023 EBIT to alter the valuation of the 2024 Put Right, and that their defense accuses Haslam and Pilot of doing the same.

The unclean hands defense "applies the maxim of equity that '[h]e who comes into equity must come with clean hands.'"[16] "Under the doctrine, the Court will refuse equitable relief 'in circumstances where the litigant's own acts offend the very sense of equity to which he appeals.'"[17] "The question raised by a plea of unclean hands is whether the plaintiff's conduct is so offensive to the integrity of the court that his claims should be denied, regardless of their merit."[18] For unclean

---

[16] *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 484 (Del. Ch. 2022) (alteration in original) (quoting 1 John Norton Pomeroy, *Pomeroy's Equity Jurisprudence* § 397, at 737 (4th ed. 1918)).

[17] *Wagamon v. Dolan*, 2013 WL 1023884, at *2 n.19 (Del. Ch. Mar. 15, 2013) (quoting *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 522 (Del. Ch. 1998)).

[18] *Gallagher v. Holcomb & Salter*, 1991 WL 158969, at *4 (Del. Ch. Aug. 16, 1991).

hands to apply, "the improper conduct must relate directly to the underlying litigation" and "the inequitable conduct must have an 'immediate and necessary' relation to the claims under which relief is sought."[19]

This Court has found a plaintiff's wrongdoing lacked a sufficient nexus to a breach of contract claim where the wrongdoing did not relate to the plaintiff's rights or the defendant's obligations under the relevant agreement. In *Bouchard v. Braidy Industries*, a former company director and CEO sought specific performance of a voting agreement.[20] The company defendant raised an unclean hands defense relating to the plaintiff's "alleged misuse of company funds, self-dealing, or other wrongful acts" while he was a director and officer.[21] The Court reasoned the allegations of wrongdoing did "not bear an immediate and necessary relation to [the plaintiff's] rights under the Voting Agreement or [the

---

[19] *Nakahara v. NS 1991 Am. Tr.*, 718 A.2d 518, 523 (Del. Ch. 1998); *Claros Diagnostics, Inc. S'holders Representative Comm. v. OPKO Health, Inc.*, 2020 WL 829361, at *13 (Del. Ch. Feb. 19, 2020) ("The doctrine, therefore, only applies where there exists a close nexus between the wrongdoing of the plaintiff and the relief he seeks."); 2 John Norton Pomeroy, *Pomeroy's Equity Jurisprudence* § 399, at 97 (5th ed. 1941) [hereinafter "*Pomeroy's*"] ("The dirt on [the complainant's] hands must be his bad conduct in the transaction complained of.").

[20] *Bouchard v. Braidy Indus., Inc.*, 2020 WL 2036601 (Del. Ch. Apr. 28, 2020).

[21] *Id.* at *13.

company's] obligations under the Voting Agreement."[22]  It also noted that the company did "not assert that [the plaintiff's] alleged 'self-dealing and other wrongful conduct' somehow affected the formation of the Voting Agreement or otherwise relates to [the plaintiff's] claims for breach of the Voting Agreement."[23] For those reasons, the Court found the requisite nexus lacking.[24]

So too here.  The Berkshire Defendants allege Haslam offered to pay PTC employees as part of a scheme to increase the value of Pilot's Put Right.  To be sure, Pilot is pursuing its claims to inform whether it will exercise its Put Right in 2024, and presents them nestled in allegations that Berkshire caused PTC to adopt pushdown accounting to decrease EBIT and the value of the 2024 Put Right. Those allegations add context to the tug-of-war over PTC's 2023 EBIT that motivates this lawsuit.  But neither Pilot's goal for this suit, nor the broader context offered in its complaint, informs the merits of Pilot's contractual claim.  And neither Pilot's goal nor its context can provide an anchor for an unclean hands

---

[22] *Id.*

[23] *Id.* at *14.

[24] *Id.*

defense: that anchor must catch on Pilot's claims.[25] Pilot's claims are narrow: they ask whether PTC's adoption of pushdown accounting for 2023 would be a change in "accounting policy" that triggers the Consent Right in the LLC Agreement. Haslam's actions do not inform Pilot's rights or Berkshire's obligations under the LLC Agreement. They lack an "immediate and necessary relation" to the relief sought.[26] The Court "is not an avenger of wrongs comment at large by those who resort to it for relief."[27]

This Court has also found that an unclean hands defense lacks a sufficient nexus where the plaintiff's claim and alleged wrongdoing related to separate agreements.[28] As pled, the Berkshire Defendants' allegations concern the Investor Rights Agreement: the Berkshire Defendants contend those same allegations warrant reformation or rescission of the 2024 Put Right granted by that

---

[25] *See Kousi v. Sugahara*, 1991 WL 248408, at *3 (Del. Ch. Nov. 21, 1991) (rejecting the argument that background facts in the complaint could be used to establish a causal nexus for purposes of unclean hands); *see also Bouchard*, 2020 WL 2036601, at *13–14; *In re Farm Indus., Inc.*, 196 A.2d 582, 589–90 (Del. Ch. 1963).

[26] *E. States Petroleum Co. v. Universal Oil Prod. Co.*, 8 A.2d 80, 82 (Del. 1939).

[27] 2 John Norton Pomeroy, *Pomeroy's Equity Jurisprudence*, § 399, at 95–96 (5th ed. 1941).

[28] *Aizen*, 285 A.3d at 494.

agreement.[29]  But Pilot's pending claims seek to enforce the Consent Right granted by the LLC Agreement.  Pilot may enforce its Consent Right without invoking its Put Right, and vice versa.  The relationship between the two offers context and motivation, but is not immediate or necessary.[30]

I recognize that striking such defenses is relatively uncommon and indeed disfavored.  But no further factual development is needed for me to evaluate the defense; I have taken the Berkshire Defendants' allegations as true and made all inferences in their favor, yet still conclude their defense could not prevail as a matter of law.  Further, the unclean hands defense is "at bottom . . . a 'rule of public policy.'"[31]  Of course, the defense "protects the integrity of a court of equity, which, as a court of conscience, will decline to aid those who are undeserving of help due to their own unconscionable conduct."[32]  The requirement that the defense be immediate and necessary to the claim also protects this court:

---

[29] D.I. 62 at Countercl. ¶¶ 52, 54.

[30] *See Bouchard*, 2020 WL 2036601, at *13–14.

[31] *Morente v. Morente*, 2000 WL 264329, at *3 (Del. Ch. Feb. 29, 2000) (quoting *Skoglund v. Ormand Indus., Inc.*, 372 A.2d 204, 213 (Del. Ch. 1976)).

[32] 2 Donald J. Wolfe Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 15.08[a], at 15-98 (2023); *see also Skoglund v. Ormand Indus., Inc.*, 372 A.2d 204, 213 (Del. Ch. 1976) ("[T]he purpose of the clean hands maxim is to protect the public and the court against misuse by one who, because of

> Litigants regularly cast stones, and it is all too easy for a litigant to invoke the doctrine of unclean hands. Its ready availability increases litigation costs, injects an additional issue for resolution into the case, and creates the risk that close calls on difficult facts will subvert the doctrine. Even if a litigant is ultimately unsuccessful in proving the defense, she may enjoy the residual benefits of painting her opponent as an unsavory character.[33]

Striking a tangential unclean hands defense from consideration of Pilot's expedited claims serves those policy interests. And the Berkshire Defendants will still be able to present their allegations in a more relevant context: NICO has filed counterclaims concerning Pilot's Put Right that it has assured the Court are coextensive with these defenses.[34] Once Pilot's expedited Consent Right claims are resolved, this action will turn to those counterclaims.[35] The motion is granted as to the unclean hands defense.

---

his conduct, has forfeited his right to have the court consider his claims, regardless of their merit.").

[33] *Aizen*, 285 A.3d at 493.

[34] The transcript of the November 30 hearing has not been finalized. I have a rough copy in which this comment appears on page 19.

[35] D.I. 97 at 4–5 (explaining NICO's counterclaims would be stayed pending resolution of the expedited claims if NICO chose not to accept the conditions for expedition); D.I. 98 (declining expedition).

### B. *In Pari Delicto*

Pilot also moved to strike the eighth affirmative defense of *in peri delicto*. "In general, 'under the *in pari delicto* doctrine, a party is barred from recovering damages if his losses are substantially caused by activities the law forbade him to engage in.'"[36]  The Berkshire Defendants argue "Pilot cannot shield its claims from the illicit conduct of its CEO that, beyond improperly inflating PTC's 2023 EBIT, has also changed the factual record of PTC's implementation of pushdown accounting—the very subject of Pilot's claims."[37]

Like their unclean hands defense, the Berkshire Defendants' *in pari delicto* defense rests on the false premise that Pilot is seeking to enforce the Put Right through this action.  Not so.  As explained, it is enforcing a different right under a different agreement.  Wrongfully inflating the 2024 Put Right's value did not substantially cause Pilot's injuries relating to the Consent Right.  The motion is granted as to the *in pari delicto* defense.

---

[36] *In re Am. Int'l Grp., Inc., Consol. Deriv. Litig.*, 976 A.2d 872, 883 (Del. Ch. 2009), (quoting *In re LJM2 Co–Inv., L.P.*, 866 A.2d 762, 775 (Del. Ch. 2004)), *aff'd sub nom. Teachers' Ret. Sys. of La. v. Gen. Re Corp.*, 11 A.3d 228 (Del. 2010).

[37] D.I. 148 at Opp. 2.

## II.    Motion To Amend

I next address the Berkshire Defendants' motion to amend.  On December 11, less than five hours after Pilot filed its opening brief in support of its motion to strike, the Berkshire Defendants moved to amend their answer by adding additional grounds for their unclean hands and *in pari delicto* defenses.[38]  They seek to add allegations that Pilot's "improper promises were intended not only to improperly inflate the value of [Pilot's] Put Right, but also to improperly influence the behavior of PTC's employees in connection with the dispute between Pilot and Berkshire . . . and in the implementation of pushdown accounting within PTC."[39]  In particular, the Berkshire Defendants allege that after this suit was filed and got underway, PTC's controller modified an internal memorandum and PTC's financial statements to reflect that PTC did not advocate pushdown accounting to Berkshire before Berkshire gained control, and that PTC had not committed to using pushdown accounting in 2023.  The Berkshire Defendants believe the controller did so because he received a side payment from Haslam, but expect the controller to deny this.

---

[38] D.I. 123 at Mot.

[39] D.I. 123, Ex. A at 39–40.

After a responsive pleading has been filed, a party may amend under Rule 15(a) "only by leave of Court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[40] "This court interprets Rule 15(a) to 'allow for liberal amendment in the interest of resolving cases on the merits.'"[41] "A party should be granted leave freely to amend its complaint, unless there is evidence of bad faith, undue delay, dilatory motive, undue prejudice or futility of amendment."[42] "The most important factor in this context is consideration of undue prejudice."[43] Pilot opposes leave to amend on the grounds of undue prejudice and futility, and addressed the Berkshire Defendants' delay in bringing the motion as part of the prejudice analysis.

I begin with delay. After much prodding, the Berkshire Defendants offered a timeline by which they learned on or around November 9 or 10 that the controller

---

[40] Ct. Ch. R. 15(a).

[41] *Twitter, Inc. v. Musk*, 2022 WL 4087797, at *1 (Del. Ch. Sept. 7, 2022) (quoting *Gould v. Gould*, 2011 WL 141168, at *7 (Del. Ch. Jan. 7, 2011)).

[42] *U.S. Bank Nat. Ass'n v. U.S. Timberlands Klamath Falls, L.L.C.*, 2005 WL 2093694, at *1 (Del. Ch. Mar. 30, 2005) (internal quotation marks omitted) (quoting *Fox v. Christina Square Assoc.*, 1995 WL 405744 (Del. Ch. June 19, 1995)).

[43] *Shulman v. Kolomoisky*, 2023 WL 1453658, at *2 (Del. Ch. Feb. 1, 2023).

had edited the financial statements;[44] their original answer with allegations of side payments followed on November 17.[45]  Even with those two inputs, the Berkshire Defendants contend they did not have what they needed to fashion another basis for unclean hands until they received the controller's emails about the edited internal memorandum (the "Memo Emails") "shortly before" December 8.[46]  They filed their motion for leave on December 11, after Pilot filed its opening brief on the motion to strike.[47]  I am skeptical that the Memo Emails added meaningful substance to the Berkshire Defendants' theory.  Their counsel was less than forthright at argument about when they were on notice of their theory, and having reviewed the Memo Emails, I think they are consistent with the edits to the financial statements.  But taking the Berkshire Defendants at their word, I cannot conclude they unduly delayed.

Taking the Berkshire Defendants at their word also compels a finding of undue prejudice.  At today's argument, I asked their counsel what discovery they

---

[44] Rough Tr. 59 (stating that the Berkshire Defendants learned of the financial statement edits around the time of the internal interviews); *id.* at 65–66 (stating that the controller informed PTC of the financial statement edits in a November 9 or November 10 interview).

[45] D.I. 62.

[46] Rough Tr. 55–58; D.I. 135 at Opp. ¶ 12.

[47] D.I. 123.

intended to pursue solely in connection with their new allegations if the motion to strike were granted: I twice suggested that a party seeking leave to amend would benefit from minimizing prejudice from that amendment.[48] Counsel offered a self-described "long-winded[]" plan to explore whether the controller, as well as others, received side payments.[49] Counsel sought between five and fourteen additional depositions to explore whether Haslam promised side payments to twenty-eight other employees, those employees' roles within the company, what Haslam said when he made each of those promises, and whether each deponent passed along the promise.[50] The Berkshire Defendants also anticipated filing a motion to compel document discovery and interrogatory responses,[51] including to obtain "text messages between Mr. Haslam and any of the employees who the company understands to have received a side payment promise," described as twenty-eight different individuals.[52] When pressed, counsel bemoaned the difficulty of "line drawing" and that he would "have to think it through" as to what

---

[48] Rough Tr. 70–71, 76.

[49] *Id.* at 71–76.

[50] *Id.* at 72–75.

[51] *Id.* at 75.

[52] *Id.* at 77, 93.

could be cut.[53]  The Berkshire Defendants made one-sided proposals to limit this discovery, such as relying on declarations or limiting each deposition to one hour. These are understandably unacceptable to Pilot, especially considering that PTC has been interviewing its employees and sharing information with the Berkshire Defendants.

The Berkshire Defendants' plan is unduly prejudicial.  Depositions start tomorrow:  counsel rattled off nine that are planned.[54]  Fact discovery ends on December 19.[55]  Trial starts January 8.[56]  I could curtail this plan by granting Pilot's motion for a protective order.  But the fact that the Berkshire Defendants insisted on facially broad discovery despite my warning that prejudice might cost the amendment suggests they may care more about prejudicing Pilot than winning leave to amend.  Having overplayed their hand, the Berkshire Defendants have lost this one.

---

[53] *Id.* at 78–79.

[54] *Id.* at 71.

[55] D.I. 42 ¶ 1(i).

[56] *Id.* ¶ 1(p).

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*